**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> MASTEN SPACE SYSTEMS, INC.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 22-10657 (BLS) |

**DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PRE-PETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF**

Masten Space Systems, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**"), hereby moves (the "**Motion**") for entry of an order (i) authorizing Debtor to (a) continue operating the Cash Management System (as defined herein), (b) open a new "DIP Funding Account" (as defined below), (c) honor and pay the Bank Fees (as defined herein) in the normal course, (d) maintain existing business forms, and (e) granting certain related relief, as described more fully herein. In support of the Motion, Debtor submits the *Declaration of David Masten in Support of First Day Motions* (the "**First Day Declaration**"),[2] incorporated herein by reference. In further support of the Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of

---

[1] The Debtor's mailing address is 1570 Sabovich St, Mojave, CA 93501. The last four digits of the Debtor's federal tax identification number is 7098.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein are sections 105, 345, and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Local Rule 2015-2.

## BACKGROUND

**A.  Case Background**

4. On July 28, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage and operate their business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 cases (the "**Chapter 11 Case**").

5. Debtor is a rocket and spacecraft company headquartered in Mojave, California. Debtor was founded in 2004 in Santa Clara, California to reduce the barriers to space by making rockets and spacecraft more cost efficient through reusability based upon the belief that rockets should operate more like airplanes than expendable ballistic missiles. Masten emphasizes reusable technologies, autonomous systems, and small operational teams. It has gained a strong reputation within the space industry as an innovator and pioneer in rocket technologies.

6. Debtor's current business can be roughly divided into three units: vertical takeoff and vertical landing ("**VTVL**") rockets, research and development ("**R&D**"), and lunar lander development. Debtor initially made its mark by developing reusable VTVL rocket vehicles. Unlike conventional expendable rockets, Debtor's rockets could be—and have been—reused for hundreds of flights. Debtor has successfully flown over 600 VTVL flights across five different rocket vehicles – more than any other company in the industry. Debtor's R&D program has covered a wide array of subject matter, ranging from applications of its rocket technology (e.g., studying the interaction between a rocket plume and the ground beneath it) to more ambitious space technology concepts (e.g., developing a GPS-like system for the Moon). Finally, Debtor has leveraged its unparalleled experience with rocket-powered landings and the recognition it received for its Lunar Lander X-Prize Challenge win to pursue opportunities to develop new lunar lander technologies.

B. **Cash Management System**

7. In the ordinary course of business, the Debtor uses a cash management system to collect funds from their operations and to pay operating and administrative expenses (the "**Cash Management System**"). The Cash Management System allows the Debtor to collect and transfer efficiently the cash generated by its business and pay its financial obligations. The Cash Management System has been in place for approximately eleven years and is essential to the stability of the Debtor's assets and business objectives, and to maximizing the value of its estate.

8. As of the Petition Date, the Debtor maintains three bank accounts (the "**Bank Accounts**") at Pacific Western Bank, 406 Blackwell St. Ste. 240, Durham, NC 27701 ("**Pac West**" or the "**Bank**"). The Cash Management System generally consists of (i) a checking account, which is the Debtor's main checking account used for bill pay ("**Checking Account**"); (ii) a savings

account where the Debtor keep the bulk of the cash ("**Savings Account**"); and (iii) a collateral account securing obligations on corporate credit cards issued by Mastercard ("**Collateral Account**").

| Type of Account | Financial Institution | Account Number (last 4 numbers) |
|---|---|---|
| Checking Account | Pac West | 0493 |
| Savings Account | Pac West | 1019 |
| Collateral Account | Pac West | 9794 |

9. All funds on deposit in the Debtor's Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law. Pac West is not on the U.S. Trustee's list of approved depository institutions.

10. As of the Petition Date, there was approximately $30,000 in cash in the Bank Accounts.[3]

11. The Cash Management System is carefully managed through oversight procedures implemented by the Debtor's financial and accounting personnel. Through its control over the Cash Management System and the daily reporting received in connection therewith, the Debtor's management can provide cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control of the administration of the Bank Accounts. The Cash Management System is essential to the efficient execution and achievement of the Debtor's strategic business objectives, and, ultimately, to maximizing the value of the Debtor's estate.

---

[3] As of the Petition Date, there was approximately $21,600 in the Checking Account.

**C.      Bank Fees**

12.     The Debtor incurs certain fees and charges in connection with the ordinary course operation of the Cash Management System (collectively, the "**Bank Fees**"). The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. On average, the Debtor incurs only *de minimis* Bank Fees per month. In the ordinary course of business, the Bank charges, and the Debtor pays, honors, or allows the deduction from the appropriate bank accounts, certain service charges, and other fees, costs, and expenses. The Debtor does not believe there are any material pre-petition Bank Fees outstanding on the Petition Date, but nonetheless seeks approval to pay any such Bank Fees in the ordinary course.

**D.      Business Forms**

13.     The Debtor utilizes numerous preprinted business forms in the ordinary course of its business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with its Cash Management System. The Debtor would be required by the United States Trustee (the "**U.S. Trustee**") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Case* (the "**U.S. Trustee Guidelines**") to incur the expense and delay of ordering entirely new business forms referencing the Debtor's status as debtor in possession absent relief from the Court. The Debtor seeks authority to use their pre-existing business forms without such a reference in order to minimize expense to the estate. The Debtor submits that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtor will likely be aware of their status as debtor in possession and, therefore, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent the Debtor exhausts its existing supply of checks, the Debtor will reorder checks with the

designation "Debtor in Possession" and the corresponding case number.

**E.  Compliance with Section 345 of the Bankruptcy Code Should be Suspended with Respect to the Bank Accounts for a Limited Period of Time.**

14. Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). To comply with section 345 of the Bankruptcy Code, the U.S. Trustee Guidelines generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee.

15. Pac West has not signed a UDA with the U.S. Trustee in Region 3. Accordingly, the Debtor requests the following deadline to bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code, or make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court the later of (i) 30 days after Petition Date, (ii) 15 days after a final order approving this Motion, or (iii) such other time to which the U.S. Trustee may agree.

16. Pac West is a trustworthy, well-capitalized, and financially stable institution with a strong reputation. All funds on deposit with Pac West are insured by the Federal Deposit Insurance Corporation to the extent provided by law. The Debtor believes it can maintain the Bank Accounts for a limited period of time without jeopardizing any parties in interest and that any funds in the Bank Accounts are secure. Accordingly, the Debtor respectfully submits that cause exists to suspend the deposit requirements of section 345(b) of the Bankruptcy Code with respect to the Bank Accounts at Pac West as set forth above.

**RELIEF REQUESTED**

17. By this Motion, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, the Debtor requests the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Debtor, in its discretion, to (a) continue operating the Cash Management System, (b) open a new "DIP Funding Account" (as defined herein), (c) honor and pay the Bank Fees (as defined herein) in the normal course, (d) maintain existing business forms, and (e) granting certain related relief, as described more fully herein.

**BASIS FOR RELIEF**

A. **Maintaining the Existing Cash Management System Is Essential to Debtor's Operational Stability.**

18. The U.S. Trustee Guidelines require a debtor in possession to, among other things:

   a. establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes;
   b. close all existing bank accounts and open new debtor-in-possession accounts;
   c. maintain a separate debtor in possession account for cash collateral; and
   d. obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.

19. These requirements are designed to provide a clear line of demarcation between pre-petition and post-petition claims and payments, and help protect against the inadvertent payment of pre-petition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during this Chapter 11 Case would severely disrupt the administration of the Debtor's estate. Accordingly, the Debtor respectfully requests authorization to operate the Bank Accounts in the same manner as they were

7

13734971/1

maintained in the ordinary course of business prior to the Petition Date.

20. Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." Columbia Gas, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

21. Here, continued use of the Cash Management System will facilitate the Chapter 11 Case by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of post-petition obligations. The Debtor respectfully submits that parties in interest will not be harmed by the maintenance of the existing Cash Management System because the Debtor employs appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date. As such, maintaining the Cash Management System is in the best interests of the Debtor's estate.

8
13734971/1

22. Furthermore, as discussed above, in the ordinary course of business, the Debtor conducts transactions through electronic wire transfers and other similar methods. If the Debtor's ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs. Accordingly, the Debtor submits that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check with a notation representing the reason for the disbursement.

B. **Authorizing (i) the Bank to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtor to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted.**

23. The Debtor respectfully requests that the Court authorize the Bank to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business. In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advise, draft, or other notification that the Debtor advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

24. The Debtor further requests that the Court authorize the Bank to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such

9

checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtor also requests that, to the extent the Bank honors a pre-petition check or other item drawn on any account either (i) at the direction of the Debtor, (ii) in a good-faith belief that the Court has authorized such pre-petition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Bank will not be deemed to be liable to the Debtor or its estate on account of such pre-petition check or other item honored post-petition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

25. The Debtor further requests that the Court authorize them to pay the Bank Fees and authorize the Bank to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtor's inability to pay the pre-petition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business post-petition could hinder its ability to manage the Cash Management System to the detriment of the Debtor's estate.

26. Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating Chapter 11 case with ongoing business operations and restructuring efforts. *See, e.g., In re TZEW Holdco, LLC*, Case No. 20-10910 CSS) (Bankr. D. Del. April 14, 2020); *In re PES Holdings, LLC*, No. 19-11626 (KG)(Bankr. D. Del. Aug. 20, 2019) (authorizing the Debtors' continued use of existing bank accounts); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del.

10

Apr. 9, 2019) (same); *In re Diesel USA, Inc.*, No. 19-10432 (MFW) (Bankr. D. Del. Mar. 5, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same).

C. **The Court Should Authorize the Debtor to Continue Using Their Existing Business Forms.**

27. To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtor requests authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtor's status as debtor in possession. The Debtor submits that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtor will likely be aware of its status as debtor in possession and, thus, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent the Debtor exhaust its existing supply of checks, the Debtor will reorder checks with the designation "Debtor in Possession" and the case number.

28. Courts in this District have routinely allowed debtors to use their pre-petition business forms without the "Debtor in Possession" label. *See, e.g., In re TZEW Holdco, LLC*, Case No. 20-10910 CSS) (Bankr. D. Del. April 14, 2020); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (authorizing Debtor's continued use of preprinted business forms without a "Debtor in Possession" marking until the supply is exhausted); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Diesel USA, Inc.*, No. 19-10432 (MFW) (Bankr. D. Del. Mar. 5, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KR)

11

(Bankr. D. Del. Feb. 26, 2019) (same).

D. **The Relief Is Necessary to Avoid Immediate and Irreparable Harm.**

29. Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the commencement of a chapter 11 case to the extent the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as set forth in the First Day Declaration, and is therefore appropriate under Bankruptcy Rule 6003.

30. As discussed above, the urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtor requests that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

31. Nothing contained in this Motion is an admission of the validity of any claim against the Debtor, a waiver of the Debtor's or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If the Court grants the relief requested in this Motion, any authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's right to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtor to pay such claims.

**NOTICE**

32. Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtor's consolidated list of twenty largest unsecured creditors; (d) the Internal Revenue Service; (e) Pacific Western Bank; (f) counsel to the proposed DIP Lender; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with this Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtor respectfully submits that such notice is sufficient, and no further notice of this Motion is required under the circumstances.

**NO PRIOR REQUEST**

33. The Debtor has not made any prior request for the relief sought herein to this Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: August 10, 2022
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Brya M. Keilson*
Jeffrey R. Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
Sarah M. Ennis (DE Bar No. 5745)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com
E-mail: sennis@morrisjames.com

*Proposed Counsel to the Debtor and Debtor in Possession*