**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MASTEN SPACE SYSTEMS, INC., | Case No. 22-10657 (BLS) |
| Debtor.[1] | **D.I. 38** |

**ORDER APPROVING DEBTOR'S MOTION FOR AN ORDER APPROVING (I)(A) THE DEBTOR'S ENTRY INTO STALKING HORSE AGREEMENT AND RELATED BID PROTECTIONS; (B) THE BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (C) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING AND AUCTION RESULTS, AND (D) DATES FOR AN AUCTION AND SALE HEARING, (II) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), (a) authorizing the Debtor to enter into and perform under the asset purchase agreement (the "Stalking Horse Agreement"), between the Debtor and Astrobotic Technology, Inc. (the "Stalking Horse Bidder") which has submitted a Qualified Bid, as defined herein  (the "Stalking Horse Bid"), subject to the solicitation of higher or otherwise better offers for the Assets, (b) approving the Bid Protections granted to the Stalking Horse Bidder under the Stalking Horse Agreement; (c) approving the bidding  procedures attached hereto as **Exhibit  1** (the "Bidding Procedures") in connection with the sale of the Assets, (d) approving the form and manner of notice of the Auction and Sale Hearing (the "Sale Notice"), attached hereto as **Exhibit 2**; (e) establishing dates and deadlines in connection with the Sale and

---

[1]  The Debtor's mailing address is 1570 Sabovich St, Mojave, CA 93501The last four digits of the Debtor's federal tax identification number is 7098.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Stalking Horse Agreement, or the Bidding Procedures, as applicable.

the approval thereof, including the Bid Deadline, the date of the Auction, if any, and the Sale

Hearing, and (f) granting related relief, all as more fully set forth in the Motion; and this Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a

final order consistent with Article III of the United States Constitution; and this Court having found

that venue of this proceeding and the Motion in this district is proper pursuant to  28 U.S.C. §§

1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having

found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were

appropriate and no other or further notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor,

**THE COURT HEREBY FINDS THAT:**

      A.     Statutory Predicates.  The predicates for the relief granted herein are

sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004

and 9014.

      B.     Notice of Motion.  The Debtor's notice of the Motion, the Hearing, and the

proposed entry of this Order was sufficient under the circumstances of this case and complied with

all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the applicable

13752997/1

13756635/1

Local Rules. Accordingly, no other or further notice of the Motion or the entry of this Order is necessary or required.

C.    <u>Bidding Procedures</u>.  The Debtor has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which were developed in good faith, are fair, reasonable, and appropriate under the circumstances, and are designed to maximize the recovery on, and realizable value of, the Assets, as determined by the Debtor in an exercise of its business judgment.

D.    <u>Stalking Horse Agreement</u>.  The Debtor and the Stalking Horse Bidder negotiated the Stalking Horse Agreement at arm's length and in good faith, without collusion.  The Stalking Horse Agreement represents the highest or otherwise best offer for the Assets that the Debtor has received to date.  Entry of this Order, including authorization for the Debtor to enter into and perform under the Stalking Horse Agreement (subject to the solicitation of higher or otherwise better offers) and approval of the break-up fee and expense reimbursement (collectively, the "<u>Bid Protections</u>") contemplated thereby, is in the best interests of the Debtor and its estate, creditors, and all other parties in interest. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder for all purposes under the Bidding Procedures.

E.    <u>Right to Credit Bid</u>.  Astrobotic Technology, Inc. shall be entitled to credit bid at the Auction all or any portion of the outstanding obligations owed by the Debtor to Astrobotic in connection with that certain Superpriority Senior Secured Debtor-in-Possession Term Credit Facility dated August 10, 2022, in accordance with section 363(k) of the Bankruptcy Code, and nothing herein or in the Sale Procedures shall prejudice or impair such credit bid rights. For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid.  Notwithstanding the foregoing, nothing herein shall affect or impair the right of the

3

Committee or the U.S. Trustee to seek to disqualify from the auction any bidder based upon conduct at or prior to the auction.

       F.    <u>Stalking Horse Bidder Bid Protections</u>.  Subject to the terms of the Stalking Horse Agreement and this Order, if the Stalking Horse Bidder is not the Successful Bidder, it shall receive a break-up fee equal to 3% of the cash portion of the Stalking Horse Bid (including any credit bid) and an expense reimbursement of up to 2% of the cash portion of the Stalking Horse Bid (including any credit bid).

       G.    <u>Bid Protections</u>.  The Bid Protections, as set forth in the Stalking Horse Agreement, are: (1) commensurate to the real and substantial benefits conferred upon the Debtor's estate by the Stalking Horse Bidder; (2) reasonable and appropriate in light of the circumstances of this Chapter 11 Case, the size and nature of the proposed sale contemplated by the Stalking Horse Agreement, the commitments that have been made by the Stalking Horse Bidder, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (3) necessary to induce the Stalking Horse Bidder to continue to pursue such sale and continue to be bound by the Stalking Horse Agreement.

       Moreover, the Bid Protections are an essential inducement to, and condition of, as applicable, the Stalking Horse Bidder's entry into, and continuing obligations under, the Stalking Horse Agreement. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer in accordance with the terms of the Stalking Horse Agreement while such offer is subject to higher or otherwise better bids as contemplated by the Bidding Procedures). The Bid Protections induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Assets on which the Debtor, its estate, its creditors, and other bidders

4

can rely. The Stalking Horse Bidder has provided a material benefit to the Debtor and its creditors by providing a baseline value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the value of the Assets will be maximized through the Debtor's proposed sale process.

Accordingly, the Bid Protections are (i) fair, reasonable and appropriate and designed to maximize value for the benefit of the Debtor's estate; and (ii) actual and necessary costs and expenses of preserving the Debtor's estate within the meanings of section 503(b) and 507(a) of the Bankruptcy Code.

The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Stalking Horse Agreement and the Bidding Procedures, subject to (1) compliance with the Bidding Procedures and (2) entry of the Sale Order.

H.      Sale Notice.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens, and no other or further notice of the Sale shall be required.

13752997/1

13756635/1

I.      Auction.  The Auction, if held, is necessary to determine whether any Qualified Bidders other than the Stalking Horse Bidder are willing to enter into one or more definitive asset purchase agreements on terms and conditions more favorable to the Debtor and its estate than the Stalking Horse Agreement.

J.      Other Findings.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth in this Order.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

    **I.      Important Dates and Deadlines.**

(i)     **Bid Deadline: September 2, 2022 at 4:00 p.m.** (prevailing Eastern Time),[3] as the deadline by which all Qualified Bids must be actually received pursuant to the Bidding Procedures (the "Bid Deadline").

(ii)    **Sale Objection Deadlines**:

    a.  **September 6, 2022 at 9:00 a.m.** (the "Sale Objection Deadline"), as the deadline for all objections other than to (i) the conduct of the Auction, or (ii) the choice of Successful Bidder(s) and/or Back-Up Bidder(s),

    b.  **September 7, 2022 at 12:00 p.m.** (the "Auction Objection Deadline") as the deadline to object to (i) the conduct of the Auction, or (ii) the choice of Successful Bidder(s) and/or Back-Up Bidder(s).

All objections must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, and (c) be filed with the Court and served on the

---

[3]      All times referenced herein refer to prevailing Eastern Time.

13752997/1

13756635/1

following so as to actually be received by the Sale Objection Deadline or Auction Objection Deadline, as applicable: (i) proposed counsel to the Debtor, Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, Attn: Jeffrey R. Waxman and Brya M. Keilson (jwaxman@ morrisjames.com and bkeilson@morrisjames.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Hannah J. McCollum (hannah.mccollum@usdoj.gov); and (iii) proposed counsel to the Committee, Kilpatrick Townsend & Stockton, LLP 1114 Avenue of the Americas, New York, NY 10036, Attn: David M. Posner and Gianfranco Finizio              (dposner@kilpatricktownsend.com              and gfinizio@kilpatricktownsend.com) and Cozen O'Connor P.C., 1201 N. Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan and    Frederick    Schmidt    (Attn:    thoran@cozen.com    and Eschmidt@cozen.com (collectively, the "Notice Parties").

(iii)    **Auction**: **September 6, 2022 at 12:00 p.m.**, as the date and time of the Auction, if one becomes necessary, which will be held at the offices of the proposed counsel for the Debtor, Morris James LLP via Zoom, or such later time as the Debtor will timely notify the Stalking Horse Bidder and all other Qualified Bidders and the official committee of unsecured creditors and their respective professionals.

(iv)    **Reply Deadline**: **September 7, 2022 at 5:00 p.m.**, as the deadline for the Debtor to file replies to any objections to the Sale.

(v)    **Sale Hearing:** on **September 8, 2022 at** 9:30 a.m., before the Honorable Brendan L. Shannon, Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, which shall be held via Zoom pursuant to the Court's video hearing procedures.

(vi)    **Closing**: on or prior to **September 9, 2022 at 11:59 p.m.**

The dates and deadlines set forth in this Order are subject to modification by the Debtor in accordance with the Bidding Procedures.

**II.    Stalking Horse Agreement.**

3.    Stalking Horse Agreement.  The Debtor is authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform under the Stalking Horse Agreement, subject to the solicitation of higher or otherwise better offers for the Assets (the "Stalking Horse Bid").  The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Bid

shall be deemed a Qualified Bid, for all purposes under the Bidding Procedures Order and Bidding Procedures.

4.      The Stalking Horse Agreement shall be binding and enforceable on the parties thereto in accordance with its terms. The failure to describe specifically or include any provision of the Stalking Horse Agreement or related documents in the Motion or this Order shall not diminish or impair the effectiveness of such provision.  The Stalking Horse Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, provided that any such amendments are filed with the Court with a redline reflecting any such modifications, amendments, or supplements.

5.      If the Stalking Horse Bidder is the Successful Bidder, it shall consummate the sale set forth in the Stalking Horse Agreement, subject to the terms and conditions therein.

6.      The Bid Protections, as set forth in this Order, are approved in their entirety.  The Stalking Horse Bidder shall be entitled to receive, and the Debtor shall be obligated to pay, the Bid Protections (i) upon a sale of all or any portion of the Debtor's Assets to a Successful Bidder other than the Stalking Horse Bidder, or (ii) after the Bid Deadline, the cancellation of the Sale by the Debtor or at the Debtor's request, whether pursuant to the Debtor's Fiduciary Out (defined herein) or otherwise.  The obligation of the Debtor to pay the Bid Protections shall survive the termination of the Stalking Horse Agreement, dismissal or conversion of the Bankruptcy Case, and confirmation of any plan of reorganization or liquidation.

7.      The Debtor and Stalking Horse Bidder are granted all rights and remedies provided to them under the Stalking Horse Agreement, including, without limitation, the right to specifically

13752997/1

13756635/1

enforce the Stalking Horse Agreement (including with respect to the Bid Protections) in accordance with its terms.

8.      For the avoidance of doubt and notwithstanding anything to the contrary contained in this Order, this Order does not approve the sale of the Assets under the Stalking Horse Agreement or authorize the consummation of the Sale.  Such approval and authorization (if any) shall be considered only at the Sale Hearing and the rights of all parties in interest to object to such approval and authorization are reserved.

### III.    Auction, Bidding Procedures, Sale Notice, and Related Relief.

9.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtor is authorized to take any and all reasonable actions necessary to implement the Bidding Procedures.

10.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Order, the Debtor will cause the Bidding Procedures and Sale Notice to be filed with the Court and served upon the Notice Parties.

### IV.    Back-Up Bidder(s).

11.      Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Debtor may, after consultation with the Official Committee of Unsecured Creditors and its professionals (the "Consultation Parties"), designate one or more Back-Up Bids to be the new Successful Bid, and the Debtor may, after consultation with the Consultation Parties, determine the Back-Up Bidder(s) to be the new Successful Bidder.  The Debtor will be authorized,

13752997/1

13756635/1

but not required, to consummate the transaction with the Back-Up Bidder(s) without further order of the Bankruptcy Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not previously approved. In such case of a breach or failure to perform on the part of the Successful Bidder and in such other circumstances as may be specified in the definitive documentation governing the Successful Bid, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor.  The Debtor's right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder(s) designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures are reserved.

### V. Combined Bids

12.     In the event that the Debtor receives multiple bids for specific Assets or packages of specific Assets that, in the aggregate, would be higher or otherwise better than the Stalking Horse Bid, the Debtor, after consultation with the Consultation Parties, may (i) designate such bids as Qualified Bids; and (ii) combine the bids to determine the highest and best bid for the Assets. The right to combine bids shall be strictly limited to the Debtor, after consultation with the Consultation Parties, and shall not waive any restriction by any bidder against collusion without the Debtor's express permission.

### VI. Designation of Executory Contracts and Leases, Cure Objections, and Assumption, Assignment, or Novation of Executory Contracts and Leases

13.     <u>Cure Notice</u>.  The notice, substantially in the form attached hereto as **<u>Exhibit 4</u>** (the "<u>Cure Notice</u>"), of potential assumption and assignment (or novation, as applicable) to either the Stalking Horse Bidder or other Successful Bidder(s) of certain of the Debtor's executory contracts and unexpired leases (collectively, the "<u>Scheduled Contracts</u>") is hereby approved in its entirety. The Cure Notice shall identify the Scheduled Contracts and provide the amounts, costs, or

10

13752997/1

13756635/1

expenses as of the date of such Cure Notice that the Debtor believes must be paid or actions or obligations that must be performed or satisfied pursuant to the Bankruptcy Code to effectuate the assumption by the Debtor and the assignment to the Successful Bidder (or novation, as applicable) of the Scheduled Contracts (each a "Cure Cost" and, collectively, the "Cure Costs").  No later than September 2, 2022, the Debtor shall file a copy of the Cure Notice with the Bankruptcy Court and serve such Cure Notice by first class mail or hand delivery (and electronic mail, if known) on all non-Debtor parties to executory contracts and leases (each, a "Contract Counterparty") and their counsel, if known.

14.    Cure Deadlines. Contract Counterparties shall have until September 12, 2022 at 4:00 p.m. (the "Cure Deadline") to object to its listed Cure Cost.  Any objection to any Cure Cost set forth on the Cure Notice, including with respect to adequate assurance of future performance of the Successful Bidder must: (a) be in writing; (b) state the basis for such objection with specificity; (c) if it contests any Cure Cost, state with specificity what amounts, costs, or expenses the Contract Counterparty believes must be paid or actions or obligations must be performed or satisfied pursuant to the Bankruptcy Code to effectuate the assumption by the Debtor and the assignment to the Successful Bidder (in all cases with appropriate documentation in support thereof); (d) comply with the Bankruptcy Rules and the Local Rules; (e) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware; and (f) be served upon: (i) counsel for the Debtor; (ii) counsel for the Committee; (iii) the Successful Bidder(s); and (iv) the Back-Up Bidder(s).  In the event that a Contract Counterparty fails to timely object to proposed Cure Costs, such Cure Costs shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

13752997/1

13756635/1

15.    <u>Designation of Contract or Leases</u>.  The ability to designate executory contracts and unexpired leases to be assumed and assigned (or novated, if applicable) to the Successful Bidder is integral to the Debtor's sales process, and the Successful Bidder's right to designate Scheduled Contracts for assumption and assignment (or novation, if applicable) is in the best interests of the Debtor and its estate, and represents the valid and reasonable exercise of the Debtor's sound business judgment, subject to the limitations of Section 365 of the Bankruptcy Code, including payment of all necessary cure amounts.  For the avoidance of doubt, a Successful Bidder is not required to assume, assign, or novate any Scheduled Contracts, in which case the procedures for assumption, assignment, or novation of the Scheduled Contracts set forth herein shall not apply to such Successful Bid, and such contracts and leases shall remain with the Debtor's estate.

16.    <u>Assumption and Assignment (or Novation) of Scheduled Contracts</u>.  Subject to the terms herein, satisfaction of the requirements of Section 365 of the Bankruptcy Code, and the terms of the Successful Bid, the Debtor is hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to assume and assign the Scheduled Contracts to the Successful Purchaser free and clear of all liens, claims, and encumbrances, and to execute and deliver to the Successful Purchaser such documents or other instruments as may be reasonably necessary to assign and transfer the Assumed Contracts and Assumed Leases to the Successful Purchaser as provided in the Purchase Agreement.

17.    From the closing of the Sale until October 10, 2022 or such later date as may be agreed upon by the Debtor, the Successful Bidder, and the Contract Counterparties to any Scheduled Contract (the "<u>Designation Period</u>"), the Successful Bidder shall have the right to designate a Scheduled Contract for assumption and assignment to the Successful Bidder by the Debtor, subject to the limitations of Section 365 of the Bankruptcy Code, including the Successful

13752997/1

13756635/1

Bidder's obligation to remit any applicable cure amounts.   Upon receipt of direction from the Successful Bidder that a Scheduled Contract is to be assumed (or novated), the Debtor, in consultation with the Committee, shall file a notice with the Court (the "Assumption Notice").

18.    If applicable, the Successful Bidder shall be responsible for those projected obligations totaling $31,315.49 listed on Exhibit 3 hereto in connection with the Scheduled Contracts, solely to the extent that such obligations first become actually due and payable by the Debtor (i) during the Designation Period and (i) prior to the Successful Bidder notifying the Debtor or its counsel that a Scheduled Contract has been removed from the Cure Notice.  In addition to the $31,515.49 in projected obligations listed on Exhibit 3, the Successful Bidder shall be responsible for a maximum of $4,684.51 in additional obligations under any other Scheduled Contract solely to the extent that such obligations first become actually due and payable by the Debtor (i) during the Designation Period and (i) prior to the Successful Bidder notifying the Debtor or its counsel that a Scheduled Contract has been removed from the Cure Notice.  For the avoidance of doubt, the maximum aggregate cost to the Successful Bidder for all obligations related to the Scheduled Contracts remaining on the Cure Notice which become due and payable by the Debtor during the Designation Period shall not exceed $36,000 (the "Expense Cap").  The Expense Cap shall not apply to those five executory contracts identified as "Non-Capped Contracts" on Exhibit 3, and the Successful Bidder shall be responsible for any obligations under such contracts that first become actually due and payable by the Debtor (i) during the Designation Period and (i) prior to the Successful Bidder notifying the Debtor or its counsel that such Non-Capped Contracts have been removed from the Cure Notice.

19.    Upon removal of a Scheduled Contract from the Cure Notice by a notice sent to the Debtor or its counsel by the Successful Bidder (including by email), which notice shall be

13

immediately effective, the Debtor shall be responsible for all obligations arising or coming due under any such Scheduled Contracts removed from the Cure Notice, and the Expense Cap shall be reduced by the projected obligations listed on Exhibit 3 relating to such Scheduled Contract.  For the avoidance of doubt, upon removal of a Scheduled Contract from the Cure Notice, such contract or lease shall not be deemed rejected, but rather shall remain with the Debtor's estate subject to (i) the terms of this Order and (ii) the Debtor's right to assume or reject such contract or lease in accordance with the Bankruptcy Code.

20.    <u>Adequate Assurance of Future Performance</u>. No later than 5:00 p.m. (ET) on September 2, 2022, the Stalking Horse Bidder shall provide the Debtor with information regarding adequate assurance of future performance for Contract Counterparties if the Stalking Horse Bidder is the assignee of the Scheduled Contracts.  All other bidders shall submit with their Bid information regarding adequate assurance of future performance if such bidder proposes to be assigned certain Scheduled Contracts (collectively, the "<u>Adequate Assurance Information</u>").  No later than September 2, 2022, the Debtor shall provide electronic copies of the Adequate Assurance Information received from the Stalking Horse Bidder and any other bidders to the Contract Counterparties (and to their counsel if known) listed as to be assigned by a Qualified Bidder.

21.    The procedures for assumption, assignment, and novation of executory contracts and unexpired leases, including the Scheduled Contracts, are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code

22.    Nothing in this Order shall extend or be deemed to extend the Designation Period beyond any applicable deadline to assume or reject executory contracts and unexpired leases set forth in section 365(d)(4) of the Bankruptcy Code.  Compliance with the foregoing provisions for the Cure Notice shall constitute sufficient notice of the Debtor's potential assumption and

13752997/1

13756635/1

assignment (or novation) of the Scheduled Contracts to the Successful Bidder, pursuant to section 365 of the Bankruptcy Code and otherwise, and, except as set forth in this Bidding Procedures Order, no other or further notice of the sale shall be required to be provided by the Debtor.

23.     <u>United States' Reservation of Rights.</u> Notwithstanding any provision to the contrary in the Motion, this Order, the Sale Order, or any implementing sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Successful Bidder of any federal (i) grants, (ii) grant funds, (iii) contracts, including but not limited to agreements, contracts, awards, and task orders between Debtor and the National Aeronautics and Space Administration, and between the Debtor and the United States Air Force, (iv) property, including but not limited to, any rights to intellectual property belonging to the United States federal government, (v) leases, and (vi) other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtor and the Successful Bidder with all terms of the Federal Interests and with all applicable non-bankruptcy law, and except as permitted by Section 365 of the Bankruptcy Code; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws, and except as permitted by Section 365 of the Bankruptcy Code; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a

13752997/1

13756635/1

governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); or (8) expand the scope of 11 U.S.C.§ 525.

### VII.    Fiduciary Out

24.    Nothing in the Bidding Procedures will require the Debtor to take any action, or to refrain from taking any action to the extent the Debtor determines that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

### VIII.    Miscellaneous

25.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

26.    In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects. In the event of any inconsistencies between this Order and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

27.    Any substantial contribution claims by any bidder are deemed waived.

28.    This Order shall be binding on and inure to the benefit of the Debtor and its estate, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

29.    This Order shall constitute the findings of fact and conclusions of law.

30.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in this case, the terms of this Order shall govern.

16

13752997/1

13756635/1

31.     To the extent any of the deadlines set forth in this Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

32.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

33.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

34.     The Debtor shall serve this Order in accordance with all applicable rules and shall file a certificate of service evidencing compliance with this requirement.

35.     The Debtor is authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

36.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: September 1st, 2022
Wilmington, Delaware

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

17

13752997/1

13756635/1