**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Masten Space Systems, Inc. | ) | Case No. 22-10657-BLS |
| | ) | |
| Debtor. | ) | Hon. Brendan L. Shannon |
| | ) | |
| | ) | |
| | ) | |

## UNITED STATES' OBJECTION TO THE SALE OF DEBTOR'S ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF GOVERNMENT CONTRACTS

The United States, on behalf of its agencies, the National Aeronautics and Space Administration ("NASA") and the United States Air Force (the "Air Force") objects to: (1) the assumption and assignment of any federal contract or other federal agreement without the United States' consent; and (2) the Debtor's Motion for an Order Approving (I)(A) The Debtor's Entry Into Stalking Horse Agreement and Related Bid Protections; (B) The Bidding Procedures in Connection with the Sale of Substantially all of the Debtor's Assets, (C) The Form and Manner of Notice of the Sale Hearing and Auction Results, and (D) Dates for an Auction and Sale Hearing, (II) The Sale of Certain of the Debtor's Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (III) Granting Related Relief ("Sale Motion"). [Docket No. 38].  In support of its objection, the United States avers as follows:

### BACKGROUND

1.      Masten Space Systems, Inc. (the "Debtor") is the counterparty to numerous contracts with NASA and the Air Force.[1]

---

[1] The eleven NASA contracts attached to Debtor's Notice of Assumption and Cure Costs with Respect to Executory Contracts or Unexpired Leases Potentially to be Assumed and Assigned or Subject to Novation in Connection with Sale of the Debtor's Assets ("Cure Notice") [Docket No. 127-2] and currently active are: (1) Contract No. 80AFRC21C0006 (Xogdor Tipping Point); (2) Contract No. 80AFRC21C0009 (MOWs Tipping Point); (3) Contract

2.      On July 29, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). [Docket No. 1].

3.      On August 14, 2022, the Debtor filed the Sale Motion. [Docket No. 38]. The asset purchase agreement ("Stalking Horse Agreement"), attached to the Sale Motion, defines "Purchased Assets" to include "Assigned Contracts" contained on Schedule 2.2.1 "[t]o the extent permitted by the Bankruptcy Code and applicable nonbankruptcy law." [Docket No. 38-3, at 12]. The Debtor later amended Schedule 2.2.1 to include numerous contracts, including contracts between NASA and Debtor and the Air Force and Debtor. [Docket No. 67-1]. Under the Stalking Horse Agreement, the purchaser has until two days before the closing to exclude any Assigned Contracts. [Docket No. 38-3, at 12].

4.      The Stalking Horse Agreement further provides that the purchaser will acquire the Purchased Assets, which include the Assigned Contracts as described above, "free and clear" of all "Encumbrances," which is defined broadly to include any "Claim, community property interest, right-of way, easement, covenant, condition, equitable interest, Lien, option, pledge, security interest, instrument, setoff or recoupment rights, right of first refusal or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership." [Docket No. 38-3, at 8, 15].

5.      Following the filing of the Sale Motion, the undersigned counsel for the United States provided language to be included in any proposed sale order and any order approving the

---

No. 80AFRC21D0004 (Flight Opportunities); (4) Contract No. 80HQTR19D0016 (CLPS Task Order 19C); (5) Contract No. 80NSSC19C0227 (PermiAM SBIR Phase II); (6) Contract No. 80NSSC20C0177 (MOWS SBIR Phase II); (7) Contract No. 80NSSC21C0068 (PISCES STTR); (8) Contract No. 80NSSC22PB086 (RDRE SBIR Phase I); (9) Contract No. 80NSSC22PB087 (Rocket SBMIR Phase I); (10) Contract No. 80NSSC21P0494 (Regolith Collection); and the Space Act Agreement 33853 (IND Network Services Support). The Air Force contracts listed on Debtor's Cure Notice and potentially outstanding are: (1) USAF Contract No. FA864921P0831 (SkyManage SBIR Phase II); and (2) USAF CRADA No. 22-034-RQ-01CRADA (AFRL CRADA).

assumption and assignment of contracts.  The Debtor ultimately agreed to most of the language,

but added the following bolded provisions:

> United States' Reservation of Rights. Notwithstanding any provision to the contrary in the Motion, this Order, the Sale Order, or any implementing sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Successful Bidder of any federal (i) grants, (ii) grant funds, (iii) contracts, including but not limited to agreements, contracts, awards, and task orders between Debtor and the National Aeronautics and Space Administration, and between the Debtor and the United States Air Force, (iv) property, including but not limited to, any rights to intellectual property belonging to the United States federal government, (v) leases, and (vi) other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtor and the Successful Bidder with all terms of the Federal Interests and with all applicable non-bankruptcy law, **and except as permitted by Section 365 of the Bankruptcy Code**; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws, **and except as permitted by Section 365 of the Bankruptcy Code**; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); or (8) expand the scope of 11 U.S.C.§ 525.

6.      On August 29, 2022, the Debtor filed a proposed and amended bid procedures

order, which included the above language. [Docket No. 90-1, ¶ 23].

7.      On August 31, 2022, the United States, through undersigned counsel, raised

concerns with the phrase "and except as permitted by Section 365 of the Bankruptcy Code," as it

creates some ambiguity with respect to the United States' rights under section 365 of the

Bankruptcy Code and *In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988), which

requires the Debtor to comply with applicable law—and thus receive the United States'

consent—prior to the assumption and assignment of the NASA and Air Force contracts.

8.     The Court reviewed the proposed bid procedures order [Docket No. 90-1],

acknowledged the applicability of the Anti-Assignment Act, 41 U.S.C. § 6305, and the Federal

Acquisition Regulations ("FAR") to federal contracts, and concluded that the language did not,

and would not, prejudice the United States' rights.

9.     On September 1, 2022, the Court entered an order ("Bid Procedures Order"): (a)

authorizing the Debtor to enter into and perform under the Stalking Horse Agreement, between

the Debtor and Astrobotic Technology, Inc. (the "Stalking Horse Bidder") which has submitted a

Qualified Bid, as defined herein (the "Stalking Horse Bid"), subject to the solicitation of higher

or otherwise better offers for the Assets, (b) approving the Bid Protections granted to the

Stalking Horse Bidder under the Stalking Horse Agreement; (c) approving the bidding

procedures attached as Exhibit 1 in connection with the sale of the Assets, (d) approving the

form and manner of notice of the Auction and Sale Hearing, attached as Exhibit 2; (e)

establishing dates and deadlines in connection with the Sale and the approval thereof, including

the Bid Deadline, the date of the Auction, if any, and the Sale Hearing, and (f) granting related

relief, all as more fully set forth in the Motion. [Docket No. 120]. The Bid Procedures Order did

not approve the sale of the Debtor's assets under the Stalking Horse Agreement or the

assumption or assignment of any contracts.  [Docket No. 120, ¶¶ 8, 13-14].

10.     The Debtor served the Cure Notice on September 2, 2022, listing all executory

contracts and government contracts that it may seek to assume and assign to a purchaser or

novate with the consent of the United States.  [Docket No. 127-2].  The Cure Notice listed $0

"Cure Costs" for each of the NASA and Air Force Contracts, and it included a two-page letter

from the Stalking Horse Bidder stating that it had the ability to perform under the listed

executory contracts and government contracts.  The deadline to object to the Cure Costs is

September 12, 2022.

11.     The deadline to object to the sale of Debtor's assets was Tuesday, September 6 at

9am ET; however, the Debtor agreed to extend that deadline for the United States to Wednesday,

September 7 at 4pm Et.  The Sale Hearing is scheduled for Thursday, September 9 at 9:30am ET.

12.     On September 7, 2022, the Debtor's counsel emailed the United States a draft

proposed sale order subject to the Debtor's approval.  The draft sale order contains the same

government reservation-of-rights language as the Bid Procedures Order.  Although the Court

found this language to be acceptable for that order, the United States files this limited objection

because (i) the draft sale order is still subject to the Debtor's approval, and (ii) the additional

language – "and except as permitted by Section 365 of the Bankruptcy Code" – creates

ambiguity in the context of that paragraph.  The United States therefore asks for the word

"except" to be removed from that phrase or the phrase to be deleted altogether.[2]

## OBJECTION

13.     The United States objects to any language in any sale order that permits the

Debtor to assume and assign the NASA and Air Force contracts absent compliance with

applicable non-bankruptcy law, including the Anti-Assignment Act and the FAR.

14.     Under 11 U.S.C. § 365(c)(1) the Debtor "may not assume or assign any executory

contract or unexpired lease of the debtor…if applicable law excuses such a party, other than the

debtor, to such a contract or lease from accepting performance from or rendering performance to

---

[2] The Debtor's counsel indicated a few hours before this filing that the Debtor, the purchaser, and the Committee would consider removing the word "except" from the added phrase, and the United States is cautiously optimistic its objection will be resolved prior to the Sale Hearing.

any entity other than the debtor or the debtor in possession." At least two federal laws excuse NASA and the Air Force from accepting performance here. First, the Anti-Assignment Act, 41 U.S.C. § 6305, provides:

> The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

15.     The Third Circuit has held that, under the Anti-Assignment Act, debtors may not assume or assign any executory contract with the United States without first obtaining its consent. *In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988). In *West Electronics*, the lower court held that the debtor-in-possession could assume a military contract if it "represented that it could cure the default." *Id.* at 81. The Third Circuit reversed. It held that, under the Anti-Assignment Act, the debtor-in-possession "could not force the government to accept the 'personal attention and services' of a third party without its consent"; therefore, the debtor-in-possession "c[ould not] assume this contract" under section 365 of the Bankruptcy Code, and the United States had the right to terminate it. *Id.* at 83. The same reasoning applies here. Section 365 of the Bankruptcy Code only allows the assumption and assignment of the NASA and Air Force contracts if NASA and the Air Force consent to that assumption and assignment, as required by the Anti-Assignment Act – and for the Debtor or any purchaser to receive that consent, the Debtor and the purchaser must comply with applicable non-bankruptcy law as it applied to each NASA and Air Force contract.

16.     Second, the FAR, codified at Title 48, Chapter 1 of the United States Code of Federal Regulations, *see* 48 C.F.R § 1.105-2, governs the acquisition process by which the United States contracts and acquires goods and/or services, and it regulates the activities of

government personnel in carrying out this process.  For example, prior to any assignment of the

NASA and Air Force contracts, Debtor and the purchaser must novate each contract. FAR

42.1204.  This process involves submitting the necessary documentation to the agencies—

including but not limited to "[e]vidence of the transferee's ability to perform" and "[e]vidence

that any security clearance requirements have been met"—and the subsequent approval by

NASA and the Air Force of the novation.  FAR 42.1204(e)–(f).  It is imperative to preserve the

United States' ability to determine with whom to contract—particularly NASA and military

contracts.  *See In re West Electronics*, 852 F.2d at 83 (recognizing that Congress squarely wanted

to prohibit transfer of military contracts without United States' consent by enacting the Anti-

Assignment Act).

17.     The United States therefore asks that the word "except" be removed from the

phrase "and except as permitted by Section 365 of the Bankruptcy Code."  This revision would

be consistent with the definition of Purchased Assets in the Stalking Horse Agreement.  *See*

Stalking Horse Agreement, at 12 (defining "Purchased Assets" to include "Assigned Contracts"

contained on Schedule 2.2.1 "[t]o the extent permitted by the Bankruptcy Code and applicable

nonbankruptcy law").  [Docket No. 38-3, at 12].

18.     The United States also objects to any language that suggests section 365 of the

Bankruptcy Code applies to the transfer or assignment of governmental licenses, registrations,

permits, or other authorizations.  The United States' reservation-of-rights language in the Bid

Procedures Order – with the Debtor's additional language in bold provides:

> Notwithstanding any provision to the contrary in the Motion, this Order, the Sale
> Order, or any implementing sale documents, nothing shall: . . . (5) authorize the
> assumption, transfer, sale or assignment of any governmental unit's (a) license,
> (b) permit, (c) registration, (d) authorization or (e) approval, or the
> discontinuation of any obligation thereunder, without compliance with all

applicable legal requirements, obligations and approvals under non-bankruptcy laws, **and except as permitted by Section 365 of the Bankruptcy Code**.

[Docket No. 120, ¶ 23] (emphasis added).

19.     A problem with this additional language is that using the phrase – "and except as permitted by Section 365 of the Bankruptcy Code" – suggests that section 365 could permit the assumption, transfer, sale, or assignment of numerous federal interests regardless of the requirements under federal law.  This is particularly concerning because the Debtor has not provided a list of the federal permits, licenses, registrations, authorizations or other governmental interests that it may seek to transfer to a purchaser with its other assets, leaving the United States with no way to evaluate whether their transfer is even allowed under applicable non-bankruptcy law or the Bankruptcy Code.  The United States therefore requests that the entire phrase be removed or the word "except" be removed to eliminate any ambiguity within the context of this paragraph in the proposed sale order.[3]

**WHEREFORE**, the United States requests that the Court deny the relief set forth in the Sale Motion and grant such other and further relief as the Court deems necessary and just.

Dated: September 7, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
DAVID C. WEISS
United States Attorney
District of Delaware

---

[3] The Debtor's counsel has indicated that it will include the same United States' reservation-of-rights language that it included in the Bid Procedures Order; however, the proposed draft sale order is still subject to the Debtor's approval.  To the extent that the Debtor does not agree to the same language, the United States objects on that basis as well.  The United States objects to any proposed sale order that extinguishes its setoff or recoupment rights or its property rights. The United States also objects to any proposed sale order that sets the cure amounts and/or accepts any adequate performance by the purchaser absent consent by NASA and the Air Force through the novation process under the FAR.

ELLEN W. SLIGHTS
Assistant United States Attorney

*/s/ Tiffiney F. Carney*
RUTH A. HARVEY
RODNEY A. MORRIS
TIFFINEY F. CARNEY
(D.C. Bar No. 1024568)
United States Department of Justice
P.O. BOX 875
Ben Franklin Station
Washington, D.C. 20044-0875
(202) 598-7521
tiffiney.carney@usdoj.gov

*Attorneys for the United States on behalf of the National Aeronautics and Space Administration and the United States Air Force*