**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MASTEN SPACE SYSTEMS, INC.,[1] | Case No. 22-10657 (BLS) |
| Debtor. | **Re: Docket Nos. 38, 90, 120, 121, 141** |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE
OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES,
(B) ESTABLISHING A DESIGNATION PERIOD AND DEADLINES FOR
THE ASSUMPTION AND ASSIGNMENT OR NOVATION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Motion for an Order Approving (I)(A) The Debtor's Entry Into Stalking Horse Agreement and Related Bid Protections; (B) The Bidding Procedures in Connection with the Sale of Substantially all of the Debtor's Assets, (C) The Form and Manner of Notice of the Sale Hearing and Auction Results, and (D) Dates for an Auction and Sale Hearing, (II) The Sale of Certain of the Debtor's Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (III) Granting Related Relief* [D.I. 38] (the "Sale Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor"); the Court having entered the *Revised Order Approving (I)(A) The Debtor's Entry Into Stalking Horse Agreement and Related Bid Protections; (B) The Bidding Procedures in Connection with the Sale of Substantially all of the Debtor's Assets, (C) The Form and Manner of Notice of the Sale Hearing and Auction Results, and (D) Dates for an Auction and Sale Hearing, (II) The Sale of Certain of the Debtor's Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests and*

---

[1] The Debtor's mailing address is 1570 Sabovich St, Mojave, CA 93501.  The last four digits of the Debtor's federal tax identification number is 7098.

*Encumbrances, and (III) Granting Related Relief* [D.I. 120] (the "Bidding Procedures Order");[2] an auction (the "Auction") for the assets having been held on September 6, 2022, pursuant to which Astrobotic Technology, Inc. or its designee (the "Buyer") was selected as the Successful Bidder; the Debtor, after consultation with the Official Committee of Unsecured Creditors (the "Committee") having determined that the highest or otherwise best offer for the assets to be acquired by the Buyer (the "Acquired Assets") was made by the Buyer; the Court having held a hearing (the "Sale Hearing") on September 8, 2022, to consider the Sale Motion; the Court having reviewed the Sale Motion, the record of the Auction, and the record in the Debtor's chapter 11 case (the "Chapter 11 Case"); the Court having considered the statements of counsel to the Debtor and the Buyer; and after due deliberation thereon and for good cause having been shown, the Court finds that the entry of this order (this "Sale Order") and granting the relief set forth herein are in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      Findings of Fact and Conclusion of Law.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction and Venue.  The Court has jurisdiction to decide the Sale Motion, and to approve the transaction contemplated in the Asset Purchase Agreement and the sale of the

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bidding Procedures Order or the Asset Purchase Agreement (as defined herein), as applicable.

2

property of the Debtor's estate, including, without limitation, the Acquired Assets (as defined in the Asset Purchase Agreement) to be sold, transferred, or conveyed pursuant to the Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

   C. <u>Basis for Relief</u>.  The statutory bases for the relief requested in the Sale Motion are (i) sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii) Bankruptcy Rules 2002(a)(2), 4001, 6004, 6006, 9007, 9008 and 9014, and (iii) Rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "<u>Local Rules</u>").

   D. <u>Final Order</u>.  This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and Local Rule 6004-1(b), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

   E. <u>Notice</u>.  As evidenced by the certificates of service filed with the Court, the Debtor provided proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise to be heard regarding the Sale Motion, the Auction, the Sale Hearing, and the transactions contemplated by that certain Asset Purchase Agreement by and among Masten Space Systems, Inc. and Astrobotic Technologies, Inc. dated August 12, 2022 (as subsequently supplemented, revised or amended, including pursuant to that First Amendment to Asset Purchase Agreement dated September 1, 2022, the "<u>Asset Purchase Agreement</u>").  Notice of the sale of the

Acquired Assets (the "Sale") has been given to all Persons[3] entitled to notice pursuant to the Bidding Procedures Order.  The notice was good and sufficient under the circumstances and provided all parties in interest a full and fair opportunity to be heard, and no other or further notice is necessary or required.

       F.     <u>Adequate Notice of Contracts and Leases to Be Assumed and Assigned</u>.  As evidenced by the certificates of service filed with the Court, the Debtor provided proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise to be heard regarding a notice of potential assumption and assignment of executory contracts or unexpired leases that may be assumed and assigned (including those contracts with the federal government that may be the subject of novation) (together, the "<u>Scheduled Contracts</u>"), including the amount of cure costs related to each of the Scheduled Contracts (the "<u>Cure Notice</u>") and a letter from the Buyer providing adequate assurance of future performance (the "<u>Adequate Assurance Letter</u>").  As set forth in the Bidding Procedures Order, each non-Debtor counterparty to the Scheduled Contracts shall have until September 12, 2022 at 4:00 p.m. (ET) (the "<u>Contract Objection Deadline</u>"), as such deadline may be extended by agreement of the Debtor, Buyer, and counterparty, to file an objection to the proposed cure amounts or to adequate assurance of future performance, and the Buyer shall have until the end of the Designation Period (as defined below) to seek the assumption of the Scheduled Contracts (or, in the case of a Scheduled Contract to which the federal government is a party, a novation).  No other or further notice of regarding the assumption and assignment of the Scheduled Contracts or the entry of this Sale Order need be given to any Person.

---

[3]     "Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including, without limitation, any Governmental Authority or any group of any of the foregoing.

G.      <u>Fair Bidding and Sale Process</u>.  The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, substantively and procedurally fair to all Persons, and negotiated and established in good faith.  The Debtor, the Buyer, the Committee and their respective professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at or prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor: (a) engaged in an extensive prepetition and postpetition marketing of the Debtor's assets; (b) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as Bidders and submit their highest or otherwise best offer to purchase the Acquired Assets; (c) provided potential purchasers, upon request, sufficient due diligence information to enable them to make an informed judgment on whether to bid on the Acquired Assets and to submit the materials required under the Bidding Procedures Order by the Bid Deadline; and (d) considered any Qualified Bids submitted on or before the Bid Deadline.  The disclosures made by the Debtor concerning the Asset Purchase Agreement and the transactions contemplated thereunder, the Auction, and the Sale Hearing were good, complete, and adequate.

H.      <u>Auction</u>.  The Auction was held, as provided in the Bidding Procedures Order, on September 6, 2022; was conducted pursuant to procedures established in good faith and in compliance with the Bidding Procedures Order; and afforded a full, fair, and reasonable opportunity for any Person that submitted a timely Qualified Bid to make a higher or otherwise better offer for the Acquired Assets than that of the Buyer.   On September 6, the Debtor filed a Notice of the Auction Results identifying the Buyer as the Successful Bidder [D.I. 126] and a

transcript of the Auction [D.I. 128].

I.       Title to Acquired Assets.  The Debtor is the sole and lawful owner of, and has clear and marketable title to, the Acquired Assets to be sold pursuant to the Asset Purchase Agreement, including, without limitation, all items of personal property and real property owned by the Debtor, as identified in the Asset Purchase Agreement.  The Debtor has full corporate power and authority to execute, deliver and perform under the Asset Purchase Agreement and to consummate all transactions contemplated thereby, without any further consent or approval required. No other consents or approvals, other than as may be expressly provided for in the Asset Purchase Agreement, are required by the Debtor.

J.       The Buyer has offered to purchase the Acquired Assets, excluding the Retained Liabilities as provided in the Asset Purchase Agreement, free and clear of all Liens,[4] Claims (defined below), Liabilities, and other encumbrances to the fullest extent authorized under section 363(f) of the Bankruptcy Code and other applicable law.  If the sale of the Acquired Assets to the Buyer were not free and clear of all Liens and liabilities, or if the Buyer would, or in the future could, be liable for any Liens or liabilities, the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale or the transactions contemplated by the Asset Purchase Agreement, thus adversely affecting the Debtor, its estate, and its creditors.

K.       Highest or Best Offer.  At the conclusion of the Auction, the Debtor, after

---

[4]       "Lien" means any mortgage, pledge, lien (statutory or otherwise), encumbrance, charge, security interest, option, right of first refusal, right of first offer, easement, interest, deed of trust, servitude, transfer restriction under any shareholder or similar agreement, security agreement or other encumbrance or restriction on the use or transfer of any property, hypothecation, license, preference, priority, covenant, right of recovery, order of any Governmental Authority, of any kind or nature (including, without limitation, (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, and (iii) any leasehold interest, license, or other right, in favor of a third party or a Debtor, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown; provided, however, that "Lien" shall not be deemed to include any license of Intellectual Property.

13766096/2

consultation with the Committee, determined that the Buyer's Qualified Bid for the Acquired Assets, as described in the Asset Purchase Agreement, was the highest or otherwise best bid. Consummating the Sale under the terms and conditions set forth in the Asset Purchase Agreement and this Sale Order will yield greater value to the Debtor's estate than would have been provided by any other available transaction.

L.      Business Judgment to Consummate Sale.  The Debtor's determination that the Sale to the Buyer pursuant to the Asset Purchase Agreement provides the highest or otherwise best offer for the Acquired Assets, and its related decision to sell the Acquired Assets to the Buyer on the terms set forth in the Asset Purchase Agreement, each constitutes a reasonable exercise of the Debtor's business judgment, and each is in the best interests of the Debtor, its estate, and its creditors.  It is a reasonable exercise of the Debtor's business judgment to execute, deliver, and consummate the Asset Purchase Agreement and consummate the transactions contemplated by the Asset Purchase Agreement, subject to this Sale Order.

M.      Satisfaction of Section 363(f) Standards.  The Debtor may sell the Acquired Assets free and clear of all encumbrances, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), Liabilities, interests, and liens, including the Retained Liabilities, rights, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, possessory interests (including those under Bankruptcy Code section 365(h)), other interests, leases, licenses, options, deeds of trust, security interests, condition sale or other title retention agreements, pledges, other liens (including, without limitation, mechanics', materialmen's and other consensual and nonconsensual liens and statutory liens), judgments, demands, rights of first refusal, offsets, set-offs, contracts, rights of recovery, claim for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, tax liabilities,

and other interests of any kind or nature whatsoever against the Debtor or the Acquired Assets, including, without limitation, any debts, arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employer pension or benefit plan claims for Taxes of or against the Debtor, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory or possession thereof, or the District of Columbia), whether arising prior to or subsequent to the Petition Date, whether known or unknown, contingent or matured, liquidated or unliquidated, and whether imposed by agreement, understanding, law, equity or otherwise, arising under or out of, in connection with, or in any way related to any of the Debtor's businesses before the effective time of Closing pursuant to the Asset Purchase Agreement (collectively, the "Claims"), because in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Without limiting the generality of the foregoing, "Claims" shall include any and all rights to payments, liabilities, or obligations whatsoever, contingent or otherwise, arising under or out of, in connection with, or in any way relating to, (i) any employee benefit plan or pension plans contributed to or maintained by the Debtor, or multi-employer plan participated in by the Debtor prior to the or subsequent to the Petition Date, including, without limitation any employee benefit plan or any Claims related to unpaid contribution or current or potential partial or complete withdrawal of termination liability with respect to the foregoing, (ii) the Worker Adjustment and Retraining Notification Act of 1988, or (iii) the Debtor's current or former employees.

       N.        Those holders of Liens who did not object, or who withdrew their objections, to the

Sale or the Sale Motion are deemed to have consented to entry of this Sale Order pursuant to section 363(f)(2) of the Bankruptcy Code. Each holder of a Lien is adequately protected by having its Lien, if any, attach to the net cash proceeds of the Sale ultimately attributable to the property against or in which it asserts a Lien, with the same validity and priority, and to the same extent, as existed before the Sale, and subject to the terms of the instruments that created such Lien and to any Liabilities and defenses the Debtor and its estate may possess with respect thereto.

O.      Valid Contract. The Asset Purchase Agreement is a valid and binding contract among the Debtor and the Buyer, which shall be enforceable according to its terms. From and after the Closing Date, the Asset Purchase Agreement, the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any Chapter 7 trustee or Chapter 11 trustee appointed in the Chapter 11 Case and shall not be subject to rejection, reconsideration, modification, or avoidance by or at the request of the foregoing Persons or any other Person except as specifically agreed in writing with the Buyer. Upon the Closing, the transfer of the Acquired Assets to the Buyer is a legal, valid, and effective transfer of the Acquired Assets and will vest the Buyer on the Closing Date with all right, title, and interest of the Debtor in and to the Acquired Assets except those explicitly and expressly excluded by the Buyer in the Asset Purchase Agreement or this Sale Order, free and clear of any and all Liens, Claims, and Liabilities. Except as specifically provided in the Asset Purchase Agreement or this Sale Order, the Buyer shall not assume or become liable for any Liens, Claims, or Liabilities relating to the Acquired Assets.

P.      No Continuation or Insider Status. The sale and transfer of the Acquired Assets to the Buyer or the Buyer's occupation and use of the Acquired Assets will not subject the Buyer to any liability (including successor liability) with respect to the operation of any of the Debtor's

business or Acquired Assets prior to Closing or by reason of such transfer. The Buyer is not holding itself out to the public as a continuation of the Debtor, and no common identity of directors, stockholders, members, or other equity holders exists between the Buyer and the Debtor. The transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor and/or the Debtor's estate; there is no substantial continuity, common identity, or continuation of enterprise between the Debtor and the Buyer. The Buyer is not a mere continuation of the Debtor or its estate, and the Buyer does not constitute an alter ego or a successor in interest to the Debtor or its estate. The Buyer is not an "insider" or "affiliate" of the Debtor, as those terms are defined in the Bankruptcy Code. The Buyer is not a successor to the Debtor or its estate by reason of any theory of law or equity.

Q.    <u>Good Faith</u>. The Asset Purchase Agreement and the transactions contemplated thereunder were negotiated and entered into in good faith within the meaning of section 363(m) of the Bankruptcy Code, based on arm's-length bargaining, and without collusion or fraud of any kind. Neither the Debtor nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Asset Purchase Agreement or to the consummation of the Sale and transfer of the Acquired Assets and the Assumed Contracts to the Buyer. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Debtor was free to deal with any other Person interested in buying or selling on behalf of the Debtor's estate some or all of the Acquired Assets. Accordingly, the Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and, therefore, the Buyer is entitled to all the protections of sections 363(m) of the Bankruptcy Code with respect to the Acquired Assets.

R.      <u>Assumption and Assignment of Scheduled Contracts</u>.  The Debtor and the Buyer

have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code,

including, without limitation, sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy

Code, in connection with the Sale and the assumption and assignment of the Scheduled Contracts.

The Buyer has provided adequate assurance of future performance with respect to Scheduled

Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.  The ability to designate

executory contracts and unexpired leases to be assumed and assigned during the Designation

Period is integral to the Asset Purchase Agreement and is in the best interests of the Debtor, its

estate, its creditors, and other parties in interest, and represents the exercise of sound and prudent

business judgment by the Debtor.

S.      <u>Cure Payments and Adequate Assurance</u>.  If an objection to the Cure Cost or

adequate assurance (a "<u>Contract Objection</u>") is timely asserted and the Buyer and the objecting

party are unable to consensually resolve the dispute, the amount to be paid under section 365 of

the Bankruptcy Code, if any, with respect to such objection will be determined at a hearing (the

"<u>Supplemental Hearing</u>") to be requested by the Debtor, the Buyer, or the applicable Contract

Counterparty.  Any Supplemental Hearing shall not occur until after the conclusion of the

Designation Period, except upon the agreement of the Debtor, Buyer, and Contract Counterparty.

If no Contract Objection for a Scheduled Contract is timely asserted by the non-Debtor

counterparty and received in accordance with the Bidding Procedures Order, then: (a) the Contract

Counterparty will be deemed to have consented to the assumption and assignment of the Scheduled

Contract; (b) the Contract Counterparty will be forever barred and estopped from asserting any

objection to the propriety or effectiveness of the assumption and assignment of the Scheduled

Contract against the Debtor, the Buyer, or the property of any of them; (c) the Cure Cost set forth

13766096/2

on the Cure Notice for such Scheduled Contract shall be controlling and the Contract Counterparty will be deemed to have consented thereto, notwithstanding anything to the contrary in the Scheduled Contract or otherwise; and (d) the Contract Counterparty will be forever barred and estopped from objecting to the Cure Cost or asserting any claims, other than the Cure Costs, against the Debtor, the Buyer, or the property of any of them.

T.    No *Sub Rosa* Plan.  The Sale of the Acquired Assets outside of a Chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization for the Debtor.  The Sale does not constitute a *sub rosa* Chapter 11 plan.

U.    Fair Consideration.  The Asset Purchase Agreement was not entered into, and neither the Debtor nor the Buyer have entered into the Asset Purchase Agreement or proposed to consummate the transactions contemplated thereby, for the purpose of hindering, delaying, or defrauding the Debtor's present or future creditors.  The total consideration provided by the Buyer for the Acquired Assets is the highest or otherwise best offer received by the Debtor, and the Purchase Price constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Acquired Assets.

V.    Personally Identifiable Information.  The Debtor, in connection with offering products or services, did not disclose any policy prohibiting the transfer or personally identifiable information with respect to the Acquired Assets, and, therefore, the Sale of the Acquired Assets may be approved by section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a

consumer privacy ombudsman, as defined in section 363(b)(1) of the Bankruptcy Code.

W.    Compliance with Bankruptcy Code.    The consummation of the transactions contemplated under the Asset Purchase Agreement is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of such transactions.

X.    Waiver of Bankruptcy Rules 6004(h) and 6006(d).    The Asset Purchase Agreement must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the transaction, and the Debtor and the Buyer intend to close the transaction as soon as reasonably practicable, and in no event later than September 9, 2022.  The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes and justifications for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement.  Accordingly, there is cause to waive the stay contemplated by Bankruptcy rules 6004(h) and 6006(d) with respect to the transactions contemplated by the Sale Order, and the Sale Order shall be immediately effective upon its entry.

**IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion is GRANTED to the extent set forth herein.

2.    Objections.  Except for any Contract Objections filed on or before the Contract Objection Deadline or as provided to the contrary herein, all objections to the Sale Motion or the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

13766096/2

3.      <u>Notice</u>.  Notice of the Sale Hearing was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, the Local Rules, and as required by the Bidding Procedures Order.

4.      <u>Approval of the Asset Purchase Agreement</u>.  The Asset Purchase Agreement, all transactions contemplated therein, and all of the terms and conditions thereof are hereby approved. The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impact the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

5.      <u>Authorization</u>.  The Debtor and its directors, officers, employees, authorized signatories, members, agents, representatives, and attorneys are hereby authorized to fully perform under, consummate, and implement the terms of the Asset Purchase Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, this Sale Order, and the Sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers, and other instruments of transfer, and to take all further actions as may be necessary for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession any or all of the Acquired Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Asset Purchase Agreement, forthwith and without any further corporate action or orders of the Court.  Neither the Buyer nor the Debtor shall have any obligation to proceed with the closing of the Asset Purchase Agreement unless and until all conditions precedent to the Buyer's and the Debtor's respective obligations thereunder have been met, satisfied, or waived by the Buyer or the Debtor, as the case may be.  All

13766096/2

Persons are prohibited from taking any action to adversely affect or interfere with the Debtor's ability to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order.  The Buyer shall be authorized, as of the Closing Date, to operate any property or any other business transacted with respect to the Acquired Assets under all licenses, permits, registrations, and governmental authorizations and approvals granted or issued to the Debtor.  In the event of conversion or dismissal following the Closing, the Buyer is granted power of attorney for the limited purpose of executing any document necessary or appropriate to implement, effectuate, and consummate the Asset Purchase Agreement, any related agreements, this Sale Order, and the transactions contemplated thereby.

6.      <u>Transfer of Acquired Assets Free and Clear of Liens and Liabilities</u>.  Pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Acquired Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.  The Acquired Assets shall be transferred to the Buyer and, upon Closing, such transfer shall (i) be valid, legal, binding and effective, (ii) vest the Buyer with all right, title and interest of the Debtor in the Acquired Assets, and (iii) upon payment of the Purchase Price, be free and clear of any Liens, Claims, Liabilities, or other encumbrances in accordance with Bankruptcy Code section 363(f).  Any such Liens, Claims, and Liabilities shall attach to the proceeds of the Sale of the Acquired Assets with the same priority, validity, force, and effect (if any) as existed with respect to the Acquired Assets as of the Petition Date.  For the avoidance of doubt, the Sale shall be free and clear of any and all Liens, Claims, and Liabilities related to or resulting from any Proceeding listed on Schedule 4.8 of the Asset Purchase Agreement, as well as that certain Complaint filed against the Debtor on or around August 19, 2022, by Kelly Caviezel with the California Department of Fair Employment and Housing (Case No. 202205-16867602).  In the

event and to the extent that any of the Acquired Assets include any prepetition or postpetition communications with the Debtor's counsel or include documents or communications that constitute in whole or part attorney work-product, as reasonably determined by the Debtor, nothing herein shall transfer or otherwise convey any of the Debtor's right or interest in privilege to the Buyer, and such right and privilege shall be considered an Excluded Asset under the Asset Purchase Agreement, except as follows:  Notwithstanding the foregoing, the Buyer shall be entitled to receive any and all documents, communications, or other information relating to Acquired Assets, whether or not protected by the attorney-client privilege, attorney work product doctrine, or other similar privilege or doctrine.  The provision of any information to the Buyer pursuant to the preceding sentence shall not waive, abrogate, or otherwise impair any such applicable privilege or doctrine, and any such privilege or doctrine shall extend to the Buyer to the same extent as the Debtor, and shall remain in full force and effect as to all other parties.

7.    <u>No Liability of Buyer</u>.  Except as otherwise provided for herein and in the Asset Purchase Agreement, the transfer of the Acquired Assets and the assumption and assignment of the Scheduled Contracts does not and will not subject the Buyer and/or its affiliates, designees, assignees, successors, directors, officers, employees, equity holders, authorized signatories, members, agents, representatives, attorneys (each a "<u>Protected Party</u>," and all such Persons collectively and together with the Buyer, the "<u>Protected Parties</u>") or any of their respective property or assets to any Claim or Liability by reason of such transfers and assignments under the laws of the United States, any state, territory, or possession thereof, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor or transferee liability.

13766096/2

8.      No Assumption of Liabilities.    Except as specifically provided in the Asset Purchase Agreement, the Buyer is not assuming and is not deemed to assume, and the Buyer shall not be nor shall any affiliate of the Buyer be in any way liable or responsible for, as a successor or otherwise, any Liens, Claims, or Liabilities of the Debtor (i) in any way whatsoever relating to or arising from the Debtor's ownership, possession, control, or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Asset Purchase Agreement; (ii) calculable by reference to the Debtor or its operations, or to any or all of the Acquired Assets; or (iii) relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Asset Purchase Agreement; which foregoing Liens, Claims, and Liabilities are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Buyer or any of its affiliates.

9.      No Successor Liability.    To the fullest extent permitted by applicable law, neither the Buyer nor its affiliates, successors, or assigns shall, as a result of the consummation of the transactions set forth in the Asset Purchase Agreement: (a) be an alter ego, mere continuation, or a successor in interest to the Debtor or the Debtor's estate; (b) have, *de facto* or otherwise, merged or consolidated with or into the Debtor or the Debtor's estate; (c) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor; or (d) be a joint employer or co-employer with, or successor employer, of the Debtor.    Except as specifically provided by the Asset Purchase Agreement, the Buyer shall not assume, be deemed to assume, or in any way be responsible for any Liens, Claims, or Liabilities of the Debtor and/or its estate, including, without limitation, pursuant to any successor liability or other theory of liability or responsibility for any Claim against the Debtor, against an insider of the Debtor, against the Acquired Assets, the Debtor's assets, or similar liability.

10.     <u>Validity of Credit Bid</u>. Pursuant to the Asset Purchase Agreement and Sections 363(b) and 363(k) of the Bankruptcy Code, in addition to the other consideration offered under the Asset Purchase Agreement, the Buyer credit bid at the Auction an amount equal to all of the outstanding DIP Obligations[5] (the "<u>Credit Bid</u>").  The Credit Bid constitutes a valid and duly authorized credit bid and is proper under the Bidding Procedures Order, Sections 363(b) and 363(k) of the Bankruptcy Code, the DIP Credit Facility[6], and applicable law. Upon the Closing of the Sale, all of the Debtor's obligations under the DIP Facility shall be deemed discharged and satisfied in full.

11.     <u>Liability Regarding Employees Prior to Closing</u>.  The Buyer shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with the Debtor for any purpose or under the laws of the United States, any state, territory, or possession thereof, and the Buyer shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including, without limitation, the Consolidated Omnibus Budget Reconciliation Act of 1985 or any similar laws or regulations, to any of the Debtor's employees or former employees, including, without limitation, any such employees who may become employees of the Buyer.

12.     <u>Release of Liens</u>.  All Persons (a) holding Claims on the Acquired Assets, (b) that have filed financing statements, mortgages, or other documents or instruments evidencing Liens against the Acquired Assets, or (c) otherwise asserting Claims against the Acquired Assets shall, and hereby are directed to, execute and deliver to the Buyer such releases or termination statements to effectuate the Sale of the Acquired Assets to the Buyer free and clear of any and all Claims, and

---

[5] As defined in the *Final Order (A) Authorizing Debtor to Obtain Post-petition Financing, (B) Granting Liens and Superpriority Claims, and (C) Granting Related Relief* (the "<u>Final DIP Order</u>") [D.I. 114].

[6] As defined in the Final DIP Order.

all Persons hereby are forever barred, estopped, and permanently enjoined from asserting such Persons' Claims against the Buyer or its affiliates. Upon consummation of the transactions set forth in the Asset Purchase Agreement, if any Person that has filed financing statements, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims, Liabilities, or Liens against or in the Acquired Assets, has not delivered to the Debtor prior to closing under the Asset Purchase Agreement, in proper form for filing and executed by the appropriate Persons, termination statements, instruments of satisfactions, releases of all Liens that such Person has with respect to the Acquired Assets (unless otherwise assumed in the Asset Purchase Agreement), or otherwise, then: (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Acquired Assets; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Acquired Assets of any kind or nature. For the avoidance of doubt, to the extent necessary, upon consummation of the transactions set forth in the Asset Purchase Agreement, the Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings, or financing statements recorded to attach, perfect, or otherwise notice any Lien that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code.

13.    <u>Claims After Closing Date</u>.  Effective on the Closing Date, all Persons asserting Liens, Claims, Liabilities, and/or contract rights against the Debtor and/or any of the Acquired Assets are hereby permanently enjoined and precluded from, with respect to such Liens, Claims, Liabilities, and/or contract rights: (a) asserting, commencing, or continuing in any manner any action against the Protected Parties, or against any Protected Party's assets or properties, including,

without limitation, against the Acquired Assets; (b) the enforcement, attachment, collection, or recovery, by any manner or means, of any judgment, award, decree, or order against the Protected Parties or any properties or Acquired Assets of the Protected Parties; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Protected Parties or any properties or Acquired Assets of the Protected Parties, including, without limitation, the Acquired Assets; (d) asserting any setoff or right of subrogation of any kind against any obligation due or owed to the Protected Parties; and (e) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Sale Order or the Asset Purchase Agreement.

14.    <u>Self-Executing Order</u>.  The provisions of this Sale Order authorizing the Sale of the Acquired Assets free and clear of Liens, Claims, and Liabilities shall be self-executing, notwithstanding any requirement for approval or consent by any Person, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the foregoing provisions of this Sale Order; <u>provided</u>, <u>however</u>, that this paragraph shall not excuse such Persons from performing any and all of their respective obligations under this Sale Order or the Asset Purchase Agreement, and the Debtor and the Buyer, and each of their respective directors, officers, employees, authorized signatories, members, agents, representatives, and attorneys are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order.

15.    <u>Cooperation and Access</u>.  The Buyer shall cooperate in good faith with reasonable requests by the Debtor or its representative in connection with the administration of the Chapter 11 Case, including by (1) affording the Debtor, its successor, or its representative, including any

successor in interest, access to any books and records acquired as part of the Acquired Assets and (2) using commercially reasonable efforts to make available to the Debtor or its successor those former senior employees of the Debtor whose assistance, expertise, testimony, notes, recollections, or presence are reasonably necessary in connection with the administration of the Chapter 11 Case, including addressing issues with claims and executory contracts and unexpired leases; provided that any out-of-pocket expenses incurred by the Buyer in connection with any foregoing request shall be paid by and solely the responsibility of the Debtor or its estate.

16.    <u>Back-Up Bidder</u>.    The Debtor, after consultation with the Committee, has determined that Intuitive Machines LLC and Impulse Space, Inc. are the Back-Up Bidders, each having submitted a Qualified Bid to acquire certain specific assets of the Debtor pursuant to section 363 of the Bankruptcy Code, and the Back-Up Bids shall remain open until the closing or termination of the Successful Bid, as applicable.  If the sale to the Buyer is not successfully consummated, the Debtor may, after consultation with the Committee, determine the Back-up Bidders to be the new Successful Bidders. The Debtor will be authorized, but not required, to consummate the transaction with the Back-Up Bidders without further order of the Bankruptcy Court.

17.    <u>Approval of Asset Purchase Agreement and Other Contracts</u>.  The Asset Purchase Agreement, substantially in the form attached hereto as <u>Exhibit A</u>, is hereby approved pursuant to section 363(b) of the Bankruptcy Code, and the Debtor is authorized to consummate and perform all of its obligations under the Asset Purchase Agreement and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Asset Purchase Agreement.  The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented in accordance with the terms thereof

13766096/2

without further order of the Court, provided that any such amendments are (i) filed with the Court with a redline reflecting any such modifications, amendments, or supplements, and (ii) served on the Committee and the U.S. Trustee, whose rights are reserved with respect to any such modification, amendment, or supplement.

18.     <u>Order Binds Successors</u>.  The terms of this Sale Order shall be binding on in all respects upon: (a) the Buyer and its successors and assigns; (b) the Debtor; (c) any successor of the Debtor, including, without limitation, any trustee or examiner appointed in the Chapter 11 Case or upon a conversion of the Chapter 11 Case to proceedings under chapter 7 of the Bankruptcy Code; (d) all creditors of, and holders of equity interests in, the Debtor, including, without limitation, any holders of Liens, Claims, and Liabilities; (e) all Contract Counterparties; (f) state licensing authorities; and (g) all other parties in interest in the Chapter 11 Case and their successors and assigns (collectively, the "<u>Bound Parties</u>").  This Sale Order shall survive any dismissal of the Chapter 11 Case notwithstanding section 349 of the Bankruptcy Code.  The provisions of this Sale Order and the terms and provisions of the Asset Purchase Agreement, and any actions taken pursuant hereto or thereto as of the date of entry of such order shall survive the entry of and shall not be modified without the written consent of Buyer by any order that may be entered confirming or consummating any Chapter 11 plan of the Debtor or converting the Debtor's Chapter 11 Case to chapter 7, and the terms and provisions of the Asset Purchase Agreement, as well as the rights and interests granted pursuant to this Sale Order and the Asset Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.

19.     <u>Order Binds Government Authorities</u>. This Sale Order shall be binding upon and govern all acts of all Persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code), and all holders of Liens, Claims, and Liabilities, including, without limitation, federal, state, and governmental agencies and departments, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report, insure any title or state of title in or to any lease, and each of the foregoing Persons, is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

20.     <u>Good Faith Purchaser</u>. The Buyer is a good faith purchaser and is hereby granted and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code to a good faith buyer, including, without limitation, with respect to the transfer of the Assumed Contracts as part of the Sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order.

21.     <u>Validity and Enforceability</u>.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal), and, notwithstanding any reversal, modification, or vacatur, the validity and enforceability of any

13766096/2

transfer under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Sale Order shall be governed in all respects by the original provisions of this Sale Order and the Asset Purchase Agreement, as applicable.

22.      Transfer of Title.  With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be the sole and sufficient evidence of the transfer of title to the Buyer, and the sale transaction consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such Persons is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

23.      Buyer's Use and Enjoyment.  All Persons, presently, or on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets directly to the Buyer or its designees on the Closing Date or at such time thereafter as the Buyer may request.  Following the Closing under the Asset Purchase Agreement, no holder of any Liens against the Acquired Assets shall have any basis to interfere with the Buyer's use and enjoyment of the Acquired Assets based on or related to such Liens, or any actions that the Debtor may take in the Chapter 11 Case, and no Person may take any action to prevent, interfere with, or otherwise impair consummation of the transactions contemplated in or by the Asset Purchase

24

Agreement or this Sale Order or adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Buyer.

24.    <u>Enforcement of Sale Order</u>.    Nothing contained in this Order shall prevent any Person, including the Debtor and the Committee, from seeking to enforce against the Buyer any applicable rights of or obligations owed to such Person under the Asset Purchase Agreement.

25.    <u>Missing Provisions / No Impact on Enforceability</u>.    The failure to include specifically in this Sale Order any particular provisions of the Asset Purchase Agreement or any of the documents, agreements, or instruments executed in connection therewith shall not diminish or impair the force of such provision, document, agreement, or instrument, it being the intent of the Court, the Debtor, and the Buyer that the Asset Purchase Agreement and each provision, document, agreement, and instrument in connection therewith be authorized and approved in its entirety with such amendments thereto as may be made in conformity with this Sale Order prior to the Closing Date.

26.    <u>Authorization for Assumption and Assignment of Assumed Contracts</u>.    Subject to the terms of the Asset Purchase Agreement and the occurrence of the Closing, and expressly subject to the right of a Contract Counterparty to object on or before the Contract Objection Deadline to the cure amount or adequate assurance of future performance under section 365 of the Bankruptcy Code, the Debtor is hereby authorized to assume each of the Scheduled Contracts and assign such Scheduled Contracts to the Buyer at any time prior to the expiration of the Designation Period.  The Debtor is hereby authorized to take all actions necessary to cause any of the Scheduled Contracts to be assumed by the Debtor and assigned to the Buyer in accordance with section 365 of the Bankruptcy Code. Notwithstanding the foregoing, nothing herein shall unilaterally authorize the novation of a Scheduled Contract to which the federal government is a Contract Counterparty.

27.    <u>Consent to Assumption and Assignment</u>.  Unless a Contract Counterparty timely files an objection to the cure amount or adequate assurance of future performance, each Contract Counterparty to a Scheduled Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, section 365(e)(2)(A)(ii) of the Bankruptcy Code, and otherwise, and the Buyer shall enjoy all of the rights and benefits under each such assumed contract as of the applicable effective date of assumption and assignment without the necessity of obtaining such Person's written consent to the assumption or assignment of such Assumed Contract.  Any Contract Counterparty to a Scheduled Contract that is a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code.  Notwithstanding the foregoing, nothing herein shall be interpreted to mean that the federal government has consented to the assumption and assignment or novation of any Scheduled Contract to which it is a Contract Counterparty.

28.    <u>Designation Period and Post-Closing Costs for Scheduled Contracts</u>.  Between Closing and October 10, 2022 (as may be extended by agreement of the Debtor, the Buyer, and a Contract Counterparty the "<u>Designation Period</u>"), the Buyer may designate any Scheduled Contract to be assumed and assigned to Buyer.  The Buyer shall be responsible for those projected obligations totaling $31,315.49 listed on Exhibit 3 to the Bidding Procedures Order in connection with the Scheduled Contracts, solely to the extent that such obligations first become actually due and payable by the Debtor (i) during the Designation Period and (ii) prior to the Buyer notifying the Debtor or its counsel that a Scheduled Contract has been removed from the Cure Notice.  In addition to the $31,515.49 in projected obligations listed on Exhibit 3 to the Bidding Procedures Order, the Buyer shall be responsible for a maximum of $4,684.51 in additional obligations under any other Scheduled Contract solely to the extent that such obligations first become actually due

26

and payable by the Debtor (i) during the Designation Period and (ii) prior to the Buyer notifying the Debtor or its counsel that a Scheduled Contract has been removed from the Cure Notice. For the avoidance of doubt, the maximum aggregate cost to the Buyer for all obligations related to the Scheduled Contracts remaining on the Cure Notice which become due and payable by the Debtor during the Designation Period shall not exceed $36,000 (the "Expense Cap"). The Expense Cap shall not apply to those five executory contracts identified as "Non-Capped Contracts" on Exhibit 3 to the Bidding Procedures Order, and the Buyer shall be responsible for any obligations under such contracts that first become actually due and payable by the Debtor (i) during the Designation Period and (ii) prior to the Buyer notifying the Debtor or its counsel that such Non-Capped Contracts have been removed from the Cure Notice.

29.     Upon removal of a Scheduled Contract from the Cure Notice by a notice sent to the Debtor or its counsel by the Buyer (including by email), which notice shall be immediately effective, the Debtor shall be responsible for all obligations arising or coming due under any such Scheduled Contracts removed from the Cure Notice, and the Expense Cap shall be reduced by the projected obligations listed on Exhibit 3 to the Bidding Procedures Order relating to such Scheduled Contract. For the avoidance of doubt, upon removal of a Scheduled Contract from the Cure Notice, such contract or lease shall not be deemed rejected, but rather shall remain with the Debtor's estate subject to (i) the terms of this Order and (ii) the Debtor's right to assume or reject such contract or lease in accordance with the Bankruptcy Code.

30.     Scheduled Contracts.  During the Designation Period, the Debtor shall not (a) assume or assign any Scheduled Contract unless and until it is designated by the Buyer for assumption (or, if applicable, novation), (b) reject any Scheduled Contract unless and until the Scheduled Contract is designated by the Buyer for rejection in a written communication to the

13766096/2

Debtor, or (c) terminate, amend, supplement, modify, waive any rights under, or create any adverse interest with respect to any Scheduled Contract without the prior written consent of the Buyer.

31.     <u>Cure Costs</u>.  All defaults or other obligations under the Scheduled Contracts arising prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs, and the Contract Counterparties to the Scheduled Contracts to be assumed and assigned to the Buyer shall be forever barred and estopped from asserting or claiming against the Debtor or the Buyer that any amounts are due or that other defaults exist under such contracts. The Contract Counterparties to the Scheduled Contracts that have been assumed and assigned to the Buyer are (a) deemed to have consented thereto, notwithstanding anything to the contrary in the Assumed Contract or otherwise, (b) forever bound by such Cure Costs, (c) forever barred, estopped, and permanently enjoined from (i) objecting to the Cure Costs or asserting any liabilities, other than the Cure Costs, against the Debtor, the Buyer, any assignee of the Assumed Contract, the Acquired Assets, or the Buyer's other property or assets and (ii) taking any action against the Debtor, the Buyer, the Acquired Assets, or the Buyer's other property or assets with respect to any Liability for cure, or any other Liability, under any Scheduled Contract that has been assumed and assigned to the Buyer

32.     <u>Payment of Cure Costs</u>. Payment of the Cure Costs to the Contract Counterparties in the amount set forth on the Cure Notice (or such other amount established by the Court) shall be deemed to discharge all of the Debtor's obligations to:  (a) cure, or provide adequate assurance that the Debtor will promptly cure, any defaults under the Scheduled Contracts; and (b) compensate, or provide adequate assurance that the Debtor will promptly compensate, any

13766096/2

Contract Counterparties for any actual pecuniary loss resulting from any default under the Scheduled Contracts.

33.    <u>Omitted Contracts</u>.  If it is discovered that a executory contract or unexpired lease should have been but was not listed on the Cure Notice (any such Contract or Lease, an "<u>Omitted Contract</u>"), the Debtor shall, immediately following the discovery thereof (but in no event later than two (2) Business Days following the discovery thereof), notify the Buyer of such Omitted Contract and all Cure Costs (if any) that the Debtor believes are owed with respect to such Omitted Contract. The Buyer shall then have until the later of the expiration of the Designation Period and fourteen (14) days after the receipt of notice of the Omitted Contract to determine whether it will seek assumption and assignment to Buyer of such Omitted Contract, or will designate the Omitted Contract for rejection by the Debtor.  If the Buyer intends to assume and assign such Omitted Contract, the Debtor shall file a motion with the Bankruptcy Court on notice to the Contract Counterparty seeking entry of an order (the "<u>Omitted Contract Motion</u>") requesting that the Bankruptcy Court fix the Cure Costs and authorize the assumption and assignment of such Omitted Contract in accordance with the Asset Purchase Agreement.  Such Contract Counterparty shall file any objection or other responsive pleading within seven (7) days of the filing of the Omitted Contract Motion.

34.    <u>Rights of Buyer Pursuant to Assumed Contracts</u>.  Upon the effective date of the assumption and assignment of each Scheduled Contract to be assumed and assigned to the Buyer, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, and interest in and to each such Scheduled Contract.  The Debtor is authorized to take all actions reasonably necessary to effectuate the foregoing.  In accordance with section 365(b)(2) and 365(f) of the Bankruptcy Code, upon assignment of a

13766096/2

Scheduled Contract to the Buyer, (a) the Buyer shall have all of the rights of the Debtor thereunder and each provision of such Scheduled Contract shall remain in full force and effect for the benefit of the Buyer notwithstanding any provision in any such Scheduled Contract or in applicable law that prohibits, restricts, or limits in any way such assignment or transfer, and (b) no Scheduled Contract may be terminated, or the rights of any Person modified in any respect, including, without limitation, pursuant to any "change of control" clause, by any other Person thereto as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement.

35.    <u>Release of SpaceX by Debtor</u>.  Effective upon entry of the Sale Order, the Debtor, on behalf of itself, its estate and any trustee, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, advisors, agents, employees, managers, representatives, assigns, and successors in interest, and all Persons acting by, through, under, or in concert with them, and each of them (collectively, the " <u>Debtor Releasing Parties</u>"), hereby release and discharge SpaceX, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, advisors, agents, employees, managers, representatives, assigns, and successors in interest, and all Persons acting by, through, under, or in concert with them, and each of them (collectively, the "<u>SpaceX Released Parties</u>"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action (including, but not limited to, avoidance actions under chapter 5 of the Bankruptcy Code), suits, rights,

demands, costs, losses, debts, penalties, fees, wages, of any nature whatsoever, known or unknown, which the Debtor Releasing Parties have, or may have had, against the SpaceX Released Parties, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions from the beginning of time until present arising from or relating to (i) the LSA, (ii) the SpaceX Credit, (iii) the Credit, (iv) the Credit Letter, (v) the Purchased Assets, (vi) any new agreement for launch services between SpaceX and Buyer or (vii) the Bankruptcy Case. Notwithstanding the foregoing, in the event SpaceX files a proof of claim or asserts an informal claim against the Debtor or its bankruptcy estate, Debtor retains the right to object to, resolve or settle any such claim.

36.    <u>Suspension or Revocation of Permits and Licenses</u>.    To the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of the Chapter 11 Case or the consummation of the Sale.

37.    <u>Change of Corporate Name</u>.    The Debtor shall, and is hereby authorized and empowered to, no later than fifteen (15) Business Days after the Closing, (a) change its corporate name consistent with applicable law and (b) change the case caption, containing the new caption and the new corporate name of the Debtor to Space Case, Inc.

38.    <u>Avoidance of Sale</u>.    The Sale of the Acquired Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code or other applicable law or statute.

39.    <u>Bulk Sale Laws</u>.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the Asset Purchase Agreement.

40.     <u>Inconsistencies</u>.  To the extent there are any inconsistencies between the terms of this Sale Order, the Asset Purchase Agreement, and any prior order or pleading with respect to the Sale Motion in the Chapter 11 Case, the terms of this Sale Order shall govern.

41.     <u>Non-Severability</u>.  The provisions of this Sale Order are non-severable and mutually dependent without the express written consent of the Buyer.

42.     <u>Provisions in Subsequent Orders</u>.  Nothing contained in any Chapter 11 plan confirmed in the Chapter 11 Case, the order confirming any Chapter 11 plan, or any order  in the Chapter 11 Case (including, without limitation, any order approving a wind-down or dismissal of the Chapter 11 Case) or any order entered as part of or after any conversion of the Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code shall alter, amend, conflict with, or derogate from the provisions of the Asset Purchase Agreement or this Sale Order, and to the extent of any conflict or derogation between this Sale Order or the Asset Purchase Agreement and such future Chapter 11 plan or order, the terms of this Sale Order and the Asset Purchase Agreement shall control.

43.     <u>No Relief From Stay Necessary</u>.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the this Sale Order, Asset Purchase Agreement, or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary to implement the preceding sentence.

44.     <u>Order Is Effective Immediately</u>.  Notwithstanding the provisions of Rules 6004(h), 6006(d), and 7062 of the Bankruptcy Rules, this Sale Order shall not be stayed after entry and shall be effective immediately upon entry, and its provisions shall be self-executing, and the Debtor and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.  The Buyer has acted in "good faith," and, in the absence of any Person obtaining a stay pending appeal, if the

Debtor and the Buyer close under the Asset Purchase Agreement, then the Buyer shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Asset Purchase Agreement if this Sale Order or any authorization contained herein is reversed or modified on appeal.

45.    <u>Buyer Is Party in Interest</u>. The Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale, and any issues related to or otherwise connected to the Asset Purchase Agreement and the Sale.

46.    <u>Exclusive Jurisdiction</u>.  The Court shall retain exclusive jurisdiction to enforce the terms and provisions of the Asset Purchase Agreement, this Sale Order, and the Bidding Procedures Order in all respects and to decide any disputes concerning this Sale Order and the Asset Purchase Agreement, or the rights and duties all Persons hereunder or thereunder, as applicable, or any issues relating to this Sale Order or the Asset Purchase Agreement, including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets and any Assumed Contracts, and all issues and disputes existing in connection with the relief authorized herein, inclusive of those concerning the transfer of the Acquired Assets free and clear of all Liens and liabilities.

47.    <u>United States Reservation of Rights</u>. Notwithstanding any provision to the contrary in the Sale Motion, this Sale Order, or any implementing sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts, including but not limited to agreements, contracts, awards, and task orders between Debtor and the National Aeronautics and Space Administration, and between the Debtor and the United States Air Force, (iv) property, including but not limited to, any rights to intellectual property belonging to the United States federal government, (v) leases, and (vi) other

33

interests of the federal government (collectively, "<u>Federal Interests</u>") without compliance by the Debtor and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law, and except, to the extent applicable, as permitted by Section 365 of the Bankruptcy Code; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws, and except, to the extent applicable, as permitted by Section 365 of the Bankruptcy Code; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); or (8) expand the scope of 11 U.S.C.§ 525.

**Dated: September 8th, 2022**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

34